Second case for the day, ADM Alliance Nutrition v. SGA Pharm Lab. Good morning, Mr. Stocks. Good morning, Your Honors. Let me please the Court. We're here on a case that was dismissed on a 12b6 motion judgment on the pleadings. On the basis of attachments to the complaint, a product development agreement, and a settlement agreement and termination agreement, and the construction of all of those by the Court on the initial pleading. ADM Alliance and the defendants entered an agreement where they would develop a product. The product was a ---- And we've read the brief, so we know the history of it, Mr. Stocks. So I guess my question is, what was the harm in converting the motion to dismiss to a motion for judgment on the pleading? The complaint discusses the termination agreement, and the agreement was the source of the affirmative defense or release. Is there anything else you would have argued if you had received notice that the motion was going to be converted? We would have, because we submit there are facts that are being determined, when you examine or scrutinize a release, you not only look at the language in the four corners, but there needs to be a full understanding of the circumstances under which a release contract is determined. But the release says it applies to claims whether known or unknown, specifically spelling that out. However, Illinois law first says that a general release is not applicable to unknown claims. The preceding paragraph to Section 5 of that release agreement, Section 4, that purports to terminate the agreement, says except as to matters that are intended to survive or continue following the termination of the agreement. Another Illinois policy we submit that's invited here is that the construction of that release, an unknown claim to ADM, but a known claim to the defendants, was the fraud in the performance of the first contract. That's not a fraud in a representation in a singular agreement. This was fraud in the performance of the first agreement as to a term that is intended to survive or continue, even pursuant to the terms of the settlement agreement. Those representations that are listed out, they don't seem very similar to a representation as to potency. It has to do with, like, tax liabilities and keeping information confidential. The clause has items which by their nature are intended to survive, and it says including but not limited to, and it sets a series of provisions of the PDA, the Product Development Agreement. The Product Development Agreement provisions that they attach also speaks to any warranties that are under the PDA, and a certificate of analysis is a sworn statement telling ADM essentially its product description, the most central and basic of what would be warranted when you secure something under this agreement. So where the fraud occurs is not on anything tangential. It is to the very core and the center point of this agreement. In the PDA, the defendants are paid a commission. In fact, their earnings are based upon the potency of this feed additive that they're procuring to inject into the animal feeds, the overall product. And that is where the fraud, where the potency in those certificates of analysis was inflated. So in connection with the performance of the first agreement, there was fraud that yielded additional commission. When we are asked to enter an agreement that would terminate that agreement that still had approximately five or six years left in its initial term, we are additionally paying the defendants $750,000 to extinguish an option they had to purchase the product that had been developed or an interest in the product to be developed. So we are unaware. I mean, after all, why would we enter a settlement agreement to terminate something that had we known of the breach already, we would have terminated on the basis of breach and then certainly turn around and pay them $750,000 extra to buy out something they would have forfeited by virtue of their breach of the initial agreement. So ADM has no knowledge that they even have a claim, but the defendant did. So we submit that Illinois law would apply and say as a general proposition to begin our analysis, an unknown claim is not released by general release terms. Section 5 would submit as a general release term. With the known and unknown language? Certainly. It is still a general release term because... Also, let me ask you, if two sophisticated businesses want to walk away from each other with no further litigation, what language would it take? It would take, certainly it would take that language, known and unknown, but it would have to be free from a fraud that is the basis of the... So there is no language then in which parties can say we are giving up claims we might have as to unknown fraud. You cannot walk away. I would submit that that is what Ainsworth tells us. Okay, but Ainsworth also did not have the non-reliance clause, right, and had some other issues as well. Could I ask you very briefly, I understood your argument in the district court primarily to be this point about Ainsworth and fraud claims being unreleasable. I didn't see in your district court arguments the arguments you are making here about the continuing obligations under the, what was it, paragraph four of the termination agreement that talks about the provisions that by their very terms, including but not limited to several paragraphs, are intended to show. I didn't see that. Did I miss that? Yes. We would be, as you get to page, just as a specific reference, four of nine of our response to the 12B6 motion, which is what we believed we were responding to at the time, when we are discussing that the certificates of analysis were of a continuing surviving character. We have a pleading. I don't see any reference to paragraph four or to a need to parse that document. Well, we are responding to their motion and our pleading that had consolidated all that, and an interpretation of a contract or of exhibits that we're told on one hand have pled us out of court but are being selectively read to do that and to determine the intent of the parties. When they are entering a settlement agreement, for that matter, any agreement, you have to read the totality of the agreements. When we finally get the court order, and they have, I believe, in footnote five, they reference, we see that there is language in the release that may or may not be relevant but then says that we didn't raise anything about it. Our position was, perhaps we're hovering above the issue higher than that, to say it was a continuing surviving obligation that was not intended to be released in the first instance, and that continuing obligation is on those portions of the first contract already executed where they had made the sworn certification of product description that that survived. And count one of our complaint simply attaches that, is that this surviving obligation was breached. That's the count one damages on breach of contract. On count two and three where we get into the fraud, which we submit also would invalidate because the fraud was used to secure an extra $750,000. And that this does actually invite Ainsworth. We're here in Schrager on the one side, Ainsworth on the other side. The two cases that are in conflict in determining which is most applicable. In Schrager, there was not a first contract. We are not dealing with a scenario where you have the parties in a written undertaking, a written contract with obligations that have been breached. That's not happening in Schrager. What you have is litigation and a decision to settle it, and the representations are what induce the second agreement. Here we have fraud in the performance of the first, which we submit is Ainsworth, fraud in the performance of the first. So I want to get back to the section 10.3 of the purchase agreement, and it says that there are certain warranties and representations that can survive termination of the agreement unless they're waived or released in writing. What warranties or representations in the purchase agreement are you relying on to support your claim? They are, well, first section 2.2, which is the certificate of analysis, and that is a sworn certificate, which is the alleged fraud, that this product had the potency upon which the past commissions have been paid, and that is where it begins. Those warranties and promises are incorporated in a subsequent section of the PDA that incorporates the warranties, including product description, representations to the FDA, things like that. We submit that this is a product description. Our product that we are procuring through Mr. Yu and through the defendants is this additive, and the certificate of analysis is central to it, and it is a sworn certificate we require, and that's where the fraud occurred in the performance of the first agreement. We never enter, as we allege in our complaint, we never enter the second agreement if we ever knew about the first fraud. So we submit that the policy manifest in Ainsworth is not overcome by the policies in Schrager because we are enabling a defendant that knows he's fraud to simply secure a second agreement and protect himself from his breaches of the first agreement, and Ainsworth states the policy clearly that I would submit Illinois law. All fours, I haven't seen the Supreme Court rule on that, would not accept that. On Schrager, even Schrager has only extended non-reliance clauses in the cases it cites to oral extrinsic representations. This is not extrinsic at all. This is actually incorporated and adopted through the settlement agreement, the terms of the PDA, and it is not oral. It is written. Although this non-reliance clause does not modify representations with oral. No, the non-reliance clause isn't, but it also has qualifying language after it, except as otherwise provided in this agreement. So we have Section 9, Section 5, and Section 4. When you read them all together, we have warranties that exist under the PDA that are accepted from we submit non-reliance or release, but even if they are not, when we get to the final stage of analysis, they, the defendants, are asking that the rule in Illinois that we say Ainsworth has established and the cases they discuss and Schrager and the cases it discusses has never extended the enforceability of a non-reliance clause beyond oral extrinsic representations. And here we have intrinsic written, the four corners of what was required by the parties is in the two documents, and this is an expansion. The ruling below is an expansion of the non-reliance case. So what was the language used here about non-reliance? It's in Section 9 of the release agreement. This agreement supersedes all prior agreements and understandings, whether written or oral. No representations or commitments were made by the parties. So you're saying that that implicitly is limited to oral statements? Illinois law will, especially in the presence of fraud. This is the battle of a non-reliance clause to a fraud. A non-reliance clause as to something that is not fraudulent, and if we were not dealing with fraudulent allegations, we might have a different outcome. I haven't reviewed that. I have never seen a case, unless you interpret Schrager broadly, where they have extended a non-reliance clause to an oral or to a written component of the document that is intrinsic to the deal. So you've got about one minute left. So do you want to save that for your rebuttal? All right. Thank you, Mr. Stocks. Ms. Galanos. Good morning. May it please the Court and Counsel, my name is Jessica Galanos, and I'm here today on behalf of defendants, Appellees, SGA Farm Lab Incorporated, and Sean Yu. I think the main point of my argument today can really be summed up in this, and that is that ADM, a sophisticated business entity, is in the position that it's in today because of its own choices. ADM chose to relinquish its right to bring any and all claims arising under the ADM chose not to rely on prior representations as evidenced by the non-reliance clause, and ADM chose to terminate the substantive provisions of the agreement between SGA and ADM embodied in the purchase and development agreement. So why don't you speak to Mr. Stocks' argument that one of the warranties and representations in the purchase agreement, at least implied, was that the certificate of analysis that was, there was an obligation that your client provided that it would be accurate, and that that then exempts it from the broad language known or unknown. Sure. ADM has raised this argument that Section 10.3, which doesn't mention the word certificate of analysis or potency or anything. Right, it's not in there. It's not in there. Their argument seems to be that Section 2.2, which is not an exception to the termination provision, somehow funnels into Section 5.6 dealing with warranties, which is also not included in the termination provision, and that those two together somehow combine into 10.3 and survive the termination provision. Just simply put, I think if ADM wanted to continue the legal effect of 2.2 or 5.6, it would have included it in the list of exceptions. And so I just, I don't think that 10.3 governs the certificates of analysis. And I would also point out that Section 2.2 only requires that the certificate of analysis be signed and sent with the product. The word potency isn't mentioned there. So simply put, I don't think that the certificates of analysis are a warranty or a representation, even in the purchase and development agreement. So there are three key provisions in the termination and settlement agreement that support the district court's dismissal of ADM's complaint. The first is the release, which has already been discussed. ADM relinquished a broad range of claims, known and unknown. And I think it's worth noting that in the termination and settlement agreement, there were actually reciprocal release provisions. So that broad language applied to ADM, but it also applied to my client so that they couldn't bring claims against ADM. So let me ask you this. How exactly is the termination agreement statement that no representations or commitments were made by the parties to induce each other to enter into this agreement a release of a fraud claim that arose before the termination agreement was signed? While it might release any claim that there was fraud in the entry of the termination agreement, how exactly does that language preclude a fraud claim based on the earlier action? I'm sorry. How does the release? Yeah, how does that language preclude a fraud claim based on the earlier action? Because it releases known and unknown claims. And although it was unknown to ADM at the time, I believe it covers that. I would also argue that the non-reliance clause covers prior representation. So ADM is essentially saying we're waiving any claims that we have against SGA and we're not relying on anything SGA has done in the past. So I think the combination of those provisions waives their right to bring a fraud claim. I'll talk just a minute here about the Ainsworth-Schrager cases. Councils continue to rely on Ainsworth for the idea that the prior representations were continuing in character and that they then tainted the document. But the non-reliance provision in Section 9 cuts off the legal effect of these prior representations. Schrager actually analyzed the Ainsworth decision and held that representations were not of a continuing character when there's a non-reliance clause. And I know Council mentioned that Ainsworth involved two contracts and Schrager only involved one. I would say that Schrager's holding is not dependent on the fact that there was only one contract there and two in the first one. There was no discussion of that whatsoever. Schrager's rationale was that a party can't agree to rely exclusively on representations contained in a release agreement and then argue that he's been defrauded based on representations made in a prior agreement. Essentially, the non-reliance clause negates the justifiable reliance element that's required for common law fraud claims. ADM has also argued that the Schrager decision was limited to oral representations. There were actually written affidavits at issue in the Schrager decision, so they actually said that the plaintiff couldn't rely on prior written affidavits, which are obviously written documents. There's also no such language in the opinion that limits the holding of Schrager to only oral representations. And, again, I think the rationale for barring fraud claims is the same for both written and oral representations, and that is parties should not agree that they did not rely on outside representations and then bring a lawsuit alleging that the only reason they entered into the agreement is because of outside representations. And we've already talked about the termination section of the Purchase and Development Agreement. Again, I think if 2.2 or 5.6 had been intended to survive the termination of the first agreement, they would have been included in that list of exceptions. I'll just briefly mention here some of the sort of minor issues in this case and then answer questions. ADM has also challenged the district court's award of attorneys' fees in this case. They haven't raised any legal authority for vacating the award, and their primary argument seems to be that SGA and Sean Yu should not have been the prevailing parties in the lower court. I would just ask that, assuming my clients remain the prevailing parties, that that fee award be upheld. It is based on an abuse of discretion standard, and there's been nothing to suggest that the district court abused its discretion. With the two procedural decisions, one being the conversion of a 12B6 motion to a 12C motion, the other being the granting of leave to defendants to file a reply brief. Again, that's evaluated under an abuse of discretion standard. I don't think there's been any real arguments that the district court abused its discretion in granting those. And so I would conclude my remarks then and just ask that you would affirm the district court's dismissal of ADM's complaint and affirm the award of attorneys' fees. Thank you. Thank you very much. And he has one minute. Mr. Stocks. Thank you, Your Honor. The Schrager opinion sidestepped the fraud question. The conflict we face in this case is fraud versus the nonreliance clause. At paragraph 33 of the Schrager opinion, they did not address the fraud question because the defendants in that case had made a payment to the plaintiff, and they said, therefore, there is no evidence that this would be injurious to the core system of our justice, and the record doesn't support because of that payment. Here, we were paying them money in the second agreement. Schrager also, every case analyzed in Schrager, was oral, extrinsic communication. It cites Risman from the Seventh Circuit that says it can apply in instances other than securities, but that was an oral, extrinsic communication, not what we have here. Section 5.1 and 5.6 of our PDA also says that the obligations are warranted, warranted that the product shall strictly conform to the terms, conditions, specifications, and descriptions, and that those warranties survive. Thank you, Mr. Stocks. Thank you. Thank you to both counsel. We'll take the case under advisement.